RICHLAND SHALE PRODUCTS COMPANY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 5755.

United States District Court
E. D. South Carolina,
Columbia Division.

Oct. 31, 1958.

Frank L. Taylor, Eugene F. Rogers, Columbia, S. C., for plaintiff.

N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., Andrew F. Oehmann,

Acting Asst. Atty. Gen., James P. Garland, Lyle M. Turner, Washington, D. C., Peter J. Donahue, Riverdale, Md., Attys. Dept. of Justice, for defendant.

TIMMERMAN, Chief Judge.

The plaintiff brings this action for the refund of income taxes in the amount of $60,808.66 which allegedly were illegally assessed and collected from the taxpayer for the years 1951, 1952, and 1953.

The plaintiff taxpayer, a South Carolina corporation with its principal place of business in Columbia, South Carolina, is in the business of mining clay and processing the clay to obtain specific clay products. In one of the two plants involved in this action, plaintiff obtains face brick and in the other it obtains such products as sewer pipe, drain tile, flue linings and wall copings.

The case facts are not in dispute and the stipulation of counsel sets forth in detail the following: the mining, processing, and sales of the plaintiff during the years 1951-1953; the basis of tax returns and tax payments for the years in question; the deficiency as determined by the Commissioner in 1954; and the payment of the deficiency under protest. See Stipulation of Facts filed herein.

■ While this action was pending the case of United States v. Merry Brothers, 5 Cir., 242 F.2d 708, was decided against the government. This decision removed the major contention of the Commissioner and the government, in the instant case, has conceded that the taxpayer is entitled to a substantial refund. The Merry case decided that gross income from mining must include income from ordinary treatment processes which must be applied to ore or mineral in order to obtain the commercially marketable product. In that case as in this one the government had excluded certain processes used to obtain a commercially marketable product and ruled that a portion of the processes used were manufacturing processes not subject to depletion under the mining statutes.

■ An additional issue was removed when the taxpayer abandoned its motion to amend its complaint. The only question now before the Court is one of statutory depletion, to wit: Whether the taxpayer's gross income from property, for purposes of computing its depletion, should be based on its gross sales or on the sales price of its first commercially marketable mineral product within the meaning of Section 114(b) (4) (B) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 114(b) (4) (B).

Subsections (m) and (n) of Section 23 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(m, n) apply to a deduction for depletion in the computation of net income:

"Sec. 23. In computing net income there shall be allowed as deductions: * * *

"(m) Depletion. In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case; such reasonable allowance in all cases to be made under rules and regulations to be prescribed by the Commissioner, with the approval of the Secretary. * * *

"(n) Basis for depreciation and depletion. The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be as provided in section 114."

Subparagraph (A) of section 114(b) (4) provides that in the case of certain minerals and other natural deposits, including deposits of "brick and tile clay", the deduction allowed by Section 23(m) "shall be" a percentage of "gross income from the property", subject to certain limitations not relevant here. A 5% rate is specified for deposits of "brick and tile clay", and a 15% rate is specified for deposits of fire clay.

Subparagraph (B) of the same paragraph defines "gross income from property" to mean "gross income from min-

ing" and then lays down the general rule that: "The term 'mining' as used herein shall be considered to include not merely the extraction of the ores or minerals from the ground but also *the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products* * * *" (Emphasis added)

The government in its brief, filed with me, contends:

"* * * that the taxpayer has two 'first commercially marketable mineral products.' One is common brick, which is produced in its brick plant from brick and tile clay. The other is 4-inch drain tile which is produced in its pipe plant from a combination of brick and tile clay with fire and refractory clay. The Government's position is that the crudest, the least refined, the least processed, the least expensive product is the first one marketable in commerce."

Opposing this position, the taxpayer in its brief reasons as follows:

"The Statute reads (Title 26, Section 114(b) (4) (B) in defining what shall be included in the depletion deduction 'the ordinary treatment processes normally applied by a mine owner or operator in order to obtain the commercially marketable mineral *product* or *products* * * *' It would appear that if Congress had intended for the Taxpayer to be entitled to a depletion deduction computed on the basis of any one product it would have so stated. The inclusion of the word 'products'

makes the statute clear and unambiguous. If the Internal Revenue Service had thought this new interpretation of the statute to be the correct one, it seems highly unusual that they would wait until after some six years of almost constant litigation and negotiation between the clay products manufacturers and the Government to make its position known."

The issue raised by the government has never been raised by it before. Cases cited by counsel for both parties deal mainly with issues as to whether or not certain processes applied to the crude mineral product were ordinary treatment processes within the meaning of Section 114(b) (4) (B).

The amount of depletion for various ores and minerals is clearly a matter for the Congress to determine. Subparagraph (B) of Section 114(b) (4) as quoted hereinbefore uses the words "commercially marketable * * * product or products". It is my opinion that the position taken by the taxpayer is correct. If Congress intended to restrict the depletion deduction to the first commercially marketable mineral product as contended by the government, it could easily have said so. Instead Congress used the word "product" in the plurality thereby refuting any limitation to a single product. The taxpayer is entitled to a depletion deduction computed on the selling price of all its finished products or its gross income from mining. Upon presentation I will sign an order of judgment consistent with this opinion.

It is so ordered.